IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

PETER KALOS, et al.,            )
                                )
     Plaintiffs,                )
                                )
        v.                      )      1:09cv833(JCC)
                                )
LAW OFFICES OF EUGENE           )
A. SEIDEL, P.A., et al.,        )
                                )
     Defendants.                )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on four Motions to Dismiss Plaintiffs' Complaint filed by Defendants Law Offices of Eugene A. Seidel, P.A. ("Seidel"), Draper & Goldberg, PLLC ("Draper"), Virginia Commerce Bank ("VCB"), Daniel Borinsky ("Borinsky").  Also before the Court are a plethora of motions - Motion to Strike Immaterial Matters contained in Draper's Motion to Dismiss, Motion to Strike Legally Insufficient Arguments in Draper and VCB's Motions to Dismiss, Motion for Emergency Injunctive Relief, Motion to Continue the October 23, 2009 Hearing, Motion to Substitute Atlantic Law Group LLC in place of Draper, and Motion to Strike the Responses filed by Draper - filed by Plaintiffs Peter and Veron Lee Kalos ("Plaintiffs" or the "Kaloses").  For the following reasons, the Court will grant Defendants Seidel, Draper and VCB' Motions to Dismiss on the jurisdictional ground and deny all of Plaintiffs's motions.

1

## I. Background

This case arises out of a foreclosure sale of a commercial property located in Manassas, Virginia (the "Manassas Property"), which was previously owned by the Kaloses. The allegations in the Complaint and facts gathered from Defendants' Memoranda in Support of Motions to Dismiss are as follows.[1]  Plaintiffs are owners of a construction company named Brickwood Contractors, Inc. ("Brickwood")(Compl. Ex. 2.)   In 2003, Brickwood put in a bid requesting the Federal Bureau of Prisons ("BOP") to grant it a water tank construction project located in Loretto, Pennsylvania (Def. Draper's Mot. 2.)   In connection with this bid, Brickwood requested United States Surety Company ("USSC") to provide a performance bond and a payment bond to the BOP on Brickwood's behalf.  USSC procured the requested performance and payment bonds through Greenwich Insurance Company on behalf of Brickwood.  (Compl. Ex. 2; Def. Draper's Mot. 2.)   To secure the performance and payment bonds, USSC required Plaintiffs to execute two indemnity deeds of trust for the benefit of USSC securing Plaintiffs and Brickwood's obligations to it.  (Def. Draper's Mot. 2.)   One of the indemnity deeds of trust was secured by the Manassas Property owned by

_____

[1] The Court attempted but failed to discern the complete background facts of this case from the disjointed factual allegations contained in the Amended Complaint.  Thus, the Court gathered and used necessary facts from Defendants' response papers to understand and provide pertinent background facts of the case.

Plaintiffs at the time, and designated Borinsky as trustee. (Compl. Ex. 4; Def. Borinsky's Mem. in Supp. of Mot. to Dismiss 1.)

The indemnity deed of trust at issue required Brickwood and Plaintiffs to reimburse USSC for any and all claims paid under the bonds issued by USSC on behalf of Brickwood, including all claims paid in connection with the performance and payment bonds procured by USSC for the aforementioned water tank construction project. (Def. Draper's Mot. 3.) When Brickwood and Plaintiffs defaulted on the indemnity deed of trust, USSC and its appointed substitute-trustee Draper, scheduled a foreclosure sale of the Manassas Property for May 17, 2006. (Def. Draper's Mot. 3; Compl. Ex. 5.) On July 28, 2006, an attorney from Seidel confessed judgment against Plaintiffs in the Circuit Court of Baltimore County, Maryland for the bond issued by USSC. (Compl. ¶ 38; Ex. 8.) Subsequently, Draper executed a trustee's deed dated August 7, 2006 and transferred the Manassas Property to Wisenbaker Holdings, LLC ("Wisenbaker"). (Comp. Ex. 11.) To purchase the Manassas Property, Wisenbaker obtained a purchase money loan from VCB. (Def. VCB's Mem. in Supp. of Mot. to Dismiss 1.) VCB is a lender-beneficiary of a deed of trust securing Wisenbaker's loan obligation against the Manassas Property. (Def. VCB's Mem. in Supp. of Mot. to Dismiss 1.)

On August 26, 2009, Peter and Veron Lee Kalos filed an

amended complaint ("Amended Complaint") against Seidel, Draper, VCB, and Wisenbaker (collectively "Defendants") requesting, among other things, that this Court invalidate the May 16, 2006 foreclosure sale of the Manassas Property.  The Amended Complaint contains the following causes of action: (1) emergency and preliminary injunction; (2) removal of invalid appointment by Draper; (3) removal of invalid trustee's deed; (4) unlawful withholding of Plaintiffs' property by Seidel; (5) unlawful withholding of Plaintiffs' property by Wisenbaker; (6) unlawful withholding of Plaintiffs' property by VCB; (7) unlawful withholding of Plaintiffs' property by Draper; and (8) judgment for possession.  Plaintiffs asks the Court to (1) "enjoin any further transfer of [the] Manassas Property"; (2) "render judgment against the Defendants"; (3) "remove clouds placed on the title of the Manassas Property"; (4) "grant judgment returning possession of the Manassas Property to [] Plaintiffs"; and (5) "award Plaintiffs their damages and costs for the unlawful withholding of their Manassas Property since December 16, 2006."  (Compl. 26-27.)

Defendants Draper, Seidel, VCB, and Borinsky separately filed Motions to Dismiss Plaintiffs' Amended Complaint for, among other things, lack of subject matter jurisdiction.  All of Defendants' motions included proper notice pursuant to Local Rule 7(K) and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

Plaintiff untimely opposed these motions.  Additionally, Plaintiffs filed a number of motions asking this Court to strike materials contained in certain Defendants' motions to dismiss, to grant emergency injunctive relief, to substitute parties, and to continue the hearing scheduled for October 23, 2009.  These motions are before the Court.

## II. Standard of Review

### A.  Lack of Subject Matter Jurisdiction

Defendants request this Court to dismiss the Amended Complaint for lack of subject matter jurisdiction.  Pursuant to Rule 12(b)(1), the Court can dismiss a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Defendants may attack subject matter jurisdiction in one of two ways.  First, defendants may contend that the complaint fails to allege facts upon which subject matter jurisdiction may be based.  *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780 (E.D. Va. 2002).  In such instances, all facts alleged in the complaint are presumed to be true.  *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).  Alternatively, defendants may argue that the jurisdictional facts alleged in the complaint are untrue.  *Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780.  In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever

evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. at 540 (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Adams*, 697 F.2d at 1219; *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F. Supp. 906, 911 (E.D. Va. 1994).  In either case, the burden of proving subject matter jurisdiction falls on the plaintiff.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219.

    B.  <u>Pro Se Plaintiff</u>

    Complaints filed by pro se plaintiffs are construed more liberally than those drafted by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Khozam v. LSAA, Inc.*, Slip Copy, 2007 WL 2932817 (W.D. N.C. 2007).  "However inartfully pleaded by a pro se plaintiff, allegations are sufficient to call for an opportunity to offer supporting evidence unless it is beyond doubt that the plaintiff can prove no set of facts entitling him to relief."  *Thompson v. Echols*, 1999 WL 717280 at *1 (4th Cir. 1999) (citing *Cruz v. Beto,* 405 U.S. 319 (1972)).  Nevertheless, while pro se litigants cannot "be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th

6

Cir. 1985).   Even in cases involving pro se litigants, district courts "cannot be expected to construct full blown claims from sentence fragments."  *Id.* at 1278.

    C.  <u>Motion to Strike</u>

    Rule 12(f) allows a district court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A Rule 12(f) motion "is the primary procedure for objecting to an insufficient defense."  5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2004).  A motion to strike a defense is, however, considered "a drastic remedy which is disfavored by the courts and infrequently granted."  *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D. W.Va. 1993); *see Mitchell v. First Central Bank, Inc.*, 2008 WL 4145449, at *1-2 (N.D. W.Va. Sept. 8, 2008); *United States v. Fairchild Indus., Inc.*, 766 F. Supp. 405, 408 (D. Md. 1991).  "Even where technically appropriate and well-founded, motions to strike defenses as insufficient are often denied in absence of a showing of prejudice to the moving party."  *Clark*, 152 F.R.D. at 70 (internal quotations and citations omitted).  In reviewing a motion to strike, "the court must view the pleading under attack in a light most favorable to the pleader."  *Id.* at 71 (*citing Lirtzman v. Spiegel, Inc.*, 493 F. Supp. 1029, 1031 n.1 (N.D. Ill.

1980); *Wohl v. Blair & Co.*, 50 F.R.D. 89, 91 (S.D.N.Y. 1970)).

When a court strikes a defense, the general practice is to grant

the defendant leave to amend.  5C Wright & Miller § 1381 (3d ed.

2004).

> D.  Motion for Emergency Injunctive Relief

The issuance or denial of a preliminary injunction or

temporary restraining order (TRO) "is committed to the sound

discretion of the trial court."  *Quince Orchard Valley Citizens

Ass'n, Inc v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989).  In

determining whether an injunction is appropriate, a district

court must apply the test stated in *Winter v. Natural Resources

Defense Council, Inc.*, 129 S. Ct. 365, 374-76 (2008); *See The

Real Truth about Obama v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009)

(holding that the standard articulated in *Winter* governs the

issuance of preliminary injunctions in all federal courts).

Under the *Winter* test, a court should examine whether

the plaintiff made a clear showing that: (1) he is likely to

succeed on the merits at trial; (2) he is likely to be

irreparably harmed absent preliminary relief; (3) the balance of

equities tips in his favor; and (4) that an injunction is in the

public interest.  *Winter*, 129 S. Ct. at 374.  All four

requirements have to be satisfied.  *Id.*

E. <u>Motion for Continuance of Hearing Date</u>

A district court's decision to grant or deny a motion for a continuance is reviewed for abuse of discretion. *United States v. Speed*, 53 F.3d 643, 644 (4th Cir. 1995). Local Rule 7(G) states that continuances will not be granted "other than for good cause and upon such terms as the Court may impose." Requests for extensions of time relating to motions "must be in writing and, in general, will be looked upon with disfavor." Local Rule 7(I).

F. <u>Motion to Substitute Parties</u>

The Fourth Circuit reviews the denial of a motion to substitute a party under Rule 25 of the Federal Rules of Civil Procedure for abuse of discretion. *E.I. du Pont De Nemours & Co. v. Lyles & Lang Constr. Co.*, 219 F.2d 328, 332 (4th Cir. 1955). If an original party's interest is transferred to another party, the Court has discretion to order the transferee to be substituted in the action or joined with the original party upon a party's motion pursuant to Rule 25(a)(3). Fed. R. Civ. P. 25(a)(3).

### III. Analysis

A. <u>Defendants' Motions to Dismiss</u>

Defendants Seidel, Draper, VCB, and Borinsky request the Court to dismiss the Amended Complaint in its entirety

9

because neither diversity or federal question subject matter jurisdiction exists in this case.  Plaintiffs argue that the Court has federal question subject matter jurisdiction over Plaintiffs' claims under the Miller Act, 40 U.S.C. §§ 270 (a)-(2).  (Pls.' Opp. to Seidel's Mot. ¶¶ 6, 8, 11, 13, 14, 19, 20.) In response, Defendants submit that Plaintiffs' mere referral to the Miller Act is insufficient to establish federal question subject matter jurisdiction.

"The Federal courts are courts of limited jurisdiction and are empowered to act only in those specific instances authorized by Congress." *Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968).  Plaintiffs in this case have the burden to show that the jurisdiction does exist.  *Id.*  Plaintiffs admit that it does not allege jurisdiction based on diversity[2] and avers that the Miller Act confers this Court exclusive federal question subject matter jurisdiction over this case.  (Pls.' Opp. to Seidel's Mot. ¶ 10.)  The review of the allegations contained in the Amended Complaint, however, reveals that the Amended Complaint on its face does not state the grounds for its federal question subject matter jurisdiction.

The Miller Act was created to replace reliance by *materialmen* upon state created liens.  *U.S. for the Use of*

---

[2] There is no diversity subject matter jurisdiction because Plaintiffs and Seidel are both citizens of Commonwealth of Virginia.  (Compl. ¶¶ 1, 6.)

*Sunbelt Pipe Corp. v. U.S. Fidelity and Guar. Co.*, 785 F.2d 468, 470 (4th Cir. 1986) (citing *J.W. Bateson Co. v. United States ex rel. Bd. of Trs.,* 434 U.S. 586, 589 (1978)) (emphasis added). Its purpose is remedial in nature and should "be given a liberal construction in order properly to effectuate the Congressional intent *to protect those whose labor and materials go into public projects*." *Id.* (internal citation and quotation omitted) (emphasis added). Thus, it is clear that the Miller Act protects subcontractors who supply labor or materials to a prime contractor and not a prime contractor himself. *See MacEvoy Co. v. Tomkins Co.*, 322 U.S. 102, 107-08 (1944). Plaintiffs are neither a prime contractor nor a subcontractor seeking a payment under a Miller Act bond. Rather, Plaintiffs are previous owners of a parcel of real property seeking the Court to recover the Manassas Property which they allege was wrongfully taken from them. Because there is no logical relation between Plaintiffs' claims and the Miller Act on which Plaintiffs base their jurisdictional assertion, the Court finds that the Miller Act is completely inapplicable to this case and will dismiss the Amended Complaint for lack of subject matter jurisdiction.

Having found that the Court lacks subject matter jurisdiction, the Court need not further consider merits of other motions filed by Plaintiffs in this case. However, out of an abundance of caution, the Court will proceed and evaluate the

11

merits of the outstanding motions filed by the Plaintiffs in the alternative.  *See Clephas v. Fagelson, Shonberger, Payne & Arthur*, 719 F.2d 92, 94 (4th Cir. 1983) (addressing the merits of the appeal after finding that the district court lacked subject matter jurisdiction.)

B.  <u>Motions to Strike</u>

Plaintiffs filed multiple motions to strike in response to Defendants' Motions to dismiss, namely, Motion to Strike Immaterial Matters contained in Draper's Motion to Dismiss, Motion to Strike Legally Insufficient Arguments in Draper and VCB's Motions to Dismiss, and Motion to Strike the Responses filed by Draper under Rule 12(f).

As articulated above, Rule 12(f) allows a district court to strike from "*a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (emphasis added).  Federal Rule of Civil Procedure 7(a) defines a "pleading" as (1) a complaint, (2) an answer, (3) a reply to a counterclaim, (4) an answer to a cross-claim, (5) a third-party complaint, or (6) a third-party answer.  Fed. R. Civ. P. 7(a).  In light of the clearly defined meaning of a "pleading" under Rule 7(a), the Court holds that neither a motion to dismiss nor a memorandum in support thereof constitutes a pleading within the meaning of Rule 12(f).  *See General Tire & Rubber Co. v. Watkins*, 331 F.2d 192, 195-96 (4th Cir. 1964)

12

(holding that Rule 7(a) precludes construing a statutorily required "notice" as a Rule 38 pleading); *In re Zweibon*, 565 F.2d 742, 747 (D.C. Cir. 1977) (holding that neither a cross-motion for summary judgment nor the opposition thereto constitutes a pleading within the meaning of Rule 38 in light of Rule 7(a)). Accordingly, the Court will deny all Plaintiffs' motions to strike filed in this matter.[3]

### C.   Motion for Emergency Injunctive Relief

Plaintiffs filed a Motion for Emergency Injunctive Relief asking this Court to enjoin the Virginia Supreme Court from hearing a petition of appeal filed by Plaintiffs themselves relating to a case adjudicated in the Circuit Court of Prince William county involving Plaintiffs, Draper and USSC, who is not a party in the instant case.  (Pls.' Mot. for Emer. Inj. Rel. 1.)

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  The Anti-Injunction Act "has helped to define our nation's system of

---

[3] On October 19, 2009, Plaintiffs Peter and Veron Lee Kaloses filed an additional Motion to Strike Immaterial Matters contained in Defendant Borinsky's Responses and noticed a hearing for November 6, 2009.  Applying the same analysis it applied in the motions to strike currently before the Court, the Court will deny the October 19, 2009 motion to strike without a hearing.

13

federalism" and the Court should not enlarge the scope of these exceptions "by loose statutory construction." *Employers v. Res. Mgmt. Co., Inc. v. Shannon*, 65 F.3d 1126, 1130 (4th Cir. 1995).

In this case, none of the these exceptions is applicable. There is no federal statute that forms a basis for Plaintiffs' claims and there is no federal court judgment that is to be protected or effectuated. Because the Court found that the Miller Act does not apply to the case at bar, an injunction is not necessary in aid of this Court's jurisdiction. In light the federalism and jurisdictional concerns, the Court will not enjoin the Supreme Court of Virginia from hearing a petition of appeal, not even scheduled, as requested by Plaintiffs.[4]

D. Motion for Continuance of Hearing Date

Pursuant Local Rule 7(G), the Court will not grant motions for continuances of a trial or hearing date "other than for good cause and upon such terms as the Court may impose" and will look upon such requests for extensions of time "with disfavor". Local Rule 7(I). The Court simply sees no good cause to grant Plaintiffs' Motion to Continue Hearings scheduled for October 23, 2009. As explained above, the Court finds

---

[4] The Court need not apply the test stated in *Winter*, 129 S. Ct. at 374-76, to determine whether the requested injunction by Plaintiffs is appropriate in light of the Anti-Injunction Act and its jurisprudence. Even if the Court were to apply the *Winter* test, the Court finds that Plaintiffs are unable to meet all elements of the *Winters* test, especially the likelihood of irreparable harm absent preliminary relief.

Plaintiffs' motions to strike are without merit and finds it unnecessary to grant time for Defendants to respond to Plaintiffs' motions to strike or grant time for Plaintiffs to file replies to Defendants' oppositions.  Moreover, Defendants' Motions to Dismiss were filed on or before September 24, 2009, and Plaintiffs have filed oppositions to all the motions to dismiss albeit late.  The Court finds that all motions scheduled for the October 23, 2009 hearing date are ripe for decision and will not further burden Defendants and this judicial system with superfluous and avertible filings by continuing the hearing.

     E.  <u>Motion to Substitute Parties</u>

On October 14, 2009, Plaintiffs filed a motion to substitute Defendant Draper with Atlantic Law Group, LLC because Draper's interest has been transferred to Atlantic Law Group, LLC effective July 17, 2009.  (Pls.' Mot. to Sub. Ex. A.)  The Court acknowledges that it has the discretion to grant Plaintiffs' request under Federal Rule of Civil Procedure 25(a)(3), but will not exercise its discretion to substitute the parties at this time.  The Court believes that the time and effort to serve a new party in the case to substitute an existing party would be wasteful in light of this Court's lack of subject matter jurisdiction.

## VI.  Conclusion

For the foregoing reasons, the Court will grant Defendants Seidel, Draper, VCB and Borinsky's Motions to Dismiss Plaintiffs' Complaint.  Also, the Court will deny Plaintiffs' Motion to Strike Immaterial Matters contained in Draper's Motion to Dismiss, Motion to Strike Legally Insufficient Arguments in Draper and VCB's Motions to Dismiss, Motion for Emergency Injunctive Relief, Motion to Continue the October 23, 2009 Hearing, Motion to Substitute Atlantic Law Group LLC in place of Draper, and Motion to Strike the Responses filed by Draper.

An appropriate Order will issue.


October 26th, 2009                    _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE

16